Rosalia Deal, Plaintiff-Appellee, v. Police Board of the City of Chicago *et al.*, Defendants-Appellants.

(No. 53537;

First District—January 17, 1972.

Raymond F. Simon, of Chicago, (Marvin E. Aspen and RocLyne E. LaPorte, of counsel,) for appellant.

Richard F. McPartlin, of Chicago, for appellee.

Mr. JUSTICE LYONS delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County reversing the determination of the Police Board of the City of Chicago that Rosalia Deal be dismissed from her position of employment as a switchboard operator for the Chicago Police Department. On appeal the defendants urge that the findings and decision of the Board are supported by the evidence. It is also urged on appeal that the only apparent reason for the court's reversal of the Board's decision involved an invasion of the province of the Board, *i.e.*, that the court found no cause for discharge.

Rosalia Deal was charged with each of the following alleged departmental rule violations:

(a) Rule 287, Notifying Police Surgeon of Activities. "* * * on December 18, 1966 the respondent left her home and was not present in the same from 1700 hours to 1920 hours without having obtained permission from the Medical Section."

(b) Rule 374, section 12, Incapacity and Inefficiency in Service. "* * * during 1965 respondent was off a total of 120 days other than regular days off and furlough, and in 1966 the respondent was off a total of 47 days other than regular days off and furlough."

(c) Rule 374, section 5, Conduct Unbecoming a Police Officer or Employee of the Police Department. It was charged that she was guilty of such conduct in that her conduct which constituted violations of Rules 287 and 374, section 12 "* * * is not that which the department expects from a reasonable, prudent, diligent, and cautious employee."

(d) Rule 371-A, Unsuitability. It was charged that plaintiff was unsuitable for employment "* * * in that from August 26, 1963 through September 16, 1966, the conduct of respondent as set forth in the previous listed rule violations (referring to the charges summarized above involving Rules 287 and 374, section 12), and following listed prior disciplinary actions renders the respondent incompetent, inept, inefficient, and otherwise unsuitable for further employment with the Chicago Police Department."

There followed a listing of disciplinary actions taken against the plaintiff during the three year period specified. These actions consisted of a written reprimand and three short term suspensions. The Board found her guilty of each of the violations charged.

Three witnesses testified against plaintiff at the Board hearing. May Bruno testified that on December 18, 1966, she was employed as assistant chief operator for the Chicago Police Department, and as such was in charge of the third watch, (1530 to 2330 hours). Plaintiff was one of the nine operators under her charge. On that date, which was the witness' regular day off, the acting supervisor, Mrs. Ann Riley took a call from plaintiff at 1610 hours. As a result of that call, plaintiff was carried on the medical roll for that date, and the witness directed Mrs. Riley to request that the 15th District make a medical check of plaintiff's residence.

This witness also gave some rather confusing testimony with respect to the efficiency ratings which she had given plaintiff in 1966. Plaintiff was given ratings of 75 and 53 per cent for the first and second halves of that year respectively. Such ratings are based upon attendance and promptness, but an absence from work would have an adverse effect on the promptness as well as the attendance factor. According to her testi-

mony, "promptness" had nothing to do with the time that an employee arrived at or departed from work.

Finally, Mrs. Bruno testified that when plaintiff did report for work she was always on time and performed her duties well.

Sergeant Nicholas J. McNamara testified that on December 18, 1966, he was assigned to the 15th District and on that date he had occasion to conduct a medical check of plaintiff's residence. He entered the vestibule of her apartment building at approximately 1800 hours. He pushed her doorbell button four or five times during the three to four minutes he remained in the vestibule. Each time he pushed the button he heard a buzzing sound coming from within the building, but he received no response. He then went to the station and from there telephoned plaintiff at her residence, against receiving no response. This same procedure was twice repeated with the same results at approximately one hour intervals. More than three hours elapsed between the time he first visited plaintiff's apartment building and the last telephone call.

The Sergeant finally testified that he did not know whether plaintiff was at home at the time he conducted his investigation. All he knew was that she had failed to respond to either the door or telephone.

Carl Miller, director of the records and communications division of the police department and plaintiff's commanding officer, testified with respect to her time and attendance records for the years 1965 and 1966. These records revealed that during 1965 she was absent from work a total of 120 days for the following reasons: 21 sick days; 30 days suspended; and 69 days on disability pension. During 1966, she lost 47 days: 15 sick days; 30 days suspended; and 2 days excused.

Mr. Miller further testified that as a result of these absences other operators were called upon to work their regular days off and overtime with a resultant adverse effect on their morale. Operators are allowed twelve sick days per year. These are days for which they are paid their regular salary even though, due to illness, they do not report to work.

Miller finally testified that he had a conversation with plaintiff approximately two months prior to his testimony. At that time he cautioned her that if she wished to remain employed by the department she could not continue to fail to perform her duties and thus inconvenience other employees by creating a situation in which they were called upon to shoulder additional responsibilities by working overtime and on her regular days off.

While from the tenor of this last portion of Miller's testimony it would appear as though this conversation was a last warning preceding the alleged infraction which triggered the filing of charges against Mrs. Deal, it appears from the record and her testimony that such was not the case.

Plaintiff had been served with the charges prior to this conversation.

Rosalia Deal, appearing on her own behalf, testified that she had been an employee of the police department since June of 1951. She was never reprimanded or suspended from that time until 1963, following the death of her husband, a policeman.

On Sunday, December 18, 1966, she telephoned the department and reported to Mrs. Riley that she would not be in on that date due to the fact that she was suffering severe pain caused by a bursitis condition. She remained in her apartment at all times that day under heavy sedation. She did not hear the telephone or doorbell ring.

Ms. Deal also testified that a new and loud doorbell had been installed in her apartment a short time prior to the date in question and that she had been annoyed by its being rung at all hours. She secured relief from this aggravation by stuffing cotton in the bell mechanism to muffle the sound. She knew that a sergeant would be sent to her apartment to make a medical check following her conversation with Mrs. Riley, but she forgot to remove the cotton from the bell.

Plaintiff also testified that from the time of the death of her husband until recently she had a poor outlook on life and was lonely, since she was not well suited to living alone. Other difficulties which she faced included a tendency toward hypertension and certain discomforts associated with menopause. During a portion of 1965, she was on disability leave from the department and received checks from the Municipal Employees Pension Benefit Fund.

She feels that her situation is now vastly improved and that her attendance, if she were allowed to return to work, would reflect the change. She has finally become reconciled to the death of her husband and has plans for moving from the memory laden apartment which she had shared with him. She is under the care of a physician for her physical ailments.

The conversation to which Mr. Miller referred during his testimony occurred at her instigation, as she had consulted him concerning the charges against her after she had been served with them. He was friendly with her and stated that she was a good worker but would have to improve her attendance record if she wished to remain an employee of the department.

We must take issue with defendant's assertion that the reason for the Circuit Court's ruling is not apparent from the record. It is clear to us that the court found the decision of the Board to be against the manifest weight of the evidence.

In considering whether the court erred in that finding, we focus our attention first to the charges relating to the alleged violations of Rules

287 and 374, section 12, since the remaining findings are based upon and must stand or fall with the proof or failure of proof of those alleged violations.

The effective charge under Rule 287 was that plaintiff, while on the medical roll, left her home without permission of the appropriate medical authority. Even if we assume for the moment that the evidence presented did establish that she was not present in her home as charged and found, there is no evidence to establish that she did so without first securing the permission of the appropriate authority.

■■ We must agree with the Circuit Court that the evidence presented relevant to the allegation that plaintiff left her home on the date in question failed to establish that fact. The only evidence presented on this issue consisted of the testimony of Sergeant McNamara, which taken at face value merely establishes that plaintiff failed to respond to either the door or telephone. While in many circumstances such fact might pro-- vide a basis from which it could reasonably be inferred that the party summoned was not at home, we do not believe that such an influence is warranted here. There is no dispute that plaintiff had reported herself to be ill, nor is there any evidence tending to directly establish that she was not in fact ill on that date. Further, her testimony to the effect that she was under heavy sedation and sleeping stands uncontradicted.

We also consider it worthy of note that although the Board's findings are consistent with the facts alleged in the charges and specifications, they do not conform to the evidence presented. It was charged and the Board found that plaintiff was absent from her home from 1700 hours to 1920 hours. Sergeant McNamara's testimony, however, was to the effect that his investigation commenced at approximately 1800 hours, and terminated more than three hours later, sometime after 2100 hours. Thus, the Board found her to be absent a full hour before Sergeant McNamara's investigation was begun, and failed to find her to be absent during the final one and one half hours of the investigation. Clearly the finding of the Board as to her absence was against the manifest weight of the evidence.

The Board properly found from the evidence presented that during the years 1965 and 1966, Mrs. Deal was off 120 and 47 days respectively. However due to the nature of many of these absences we must agree with the Circuit Court that the Board's conclusion that these absences establish her incapacity and inefficiency is not warranted.

■■ Fairness requires that many of these absences not be considered against Mrs. Deal in support of the charges made pursuant to Rule 374, section 12. Of the 120 days lost in 1965, for example, 30 were involuntary absences due to two suspensions. To allow them to be considered against

her in the present proceeding would be to ascribe culpability for conforming her conduct to the punishment prescribed for apparent previous offenses.

Another 69 of those days were absences due to plaintiff's having been admitted to disability leave status. Clearly these should not be considered against her. Finally, 21 of the absences were days on which she was reported ill. Mr. Miller testified that operators receive their regular salary on days off due to illness up to a maximum of twelve such days per year. Thus it would appear that as a matter of policy the department does not consider that number of days lost per year due to illness to be excessive or objectionable. According to the evidence, Mrs. Deal exceeded that number by only nine days during 1965, and four of these absences occurred within two weeks prior to her disability leave.

Similarly in 1966, 30 of the 47 days lost were involuntary absences due to suspension. Two days were accounted for as excused absences, and 15 were "sick days." There is no record of unexcused absences during either year. The most that can be said for this evidence is that during a two year period Mrs. Deal, an employee of 15 years standing, was absent due to apparent illness a total of twelve days in excess of that which the department appears to consider normal or acceptable. While it may be true, as Mr. Miller testified, that the plaintiff's absence caused some administrative hardships, the conclusion of the Board that plaintiff's incapacity and inefficiency in the service of the police department was proven by this evidence finds no support in logic or fairness.

As noted above, the findings of the Board with respect to the charges involving Rules 374, section 5 and 371-A are dependent upon the validity of its findings on the charges discussed above. Consequently we must conclude them to be similarly without basis. Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.