GEORGE LAVIN, Plaintiff-Appellee, *v.* THE CIVIL SERVICE COMMISSION *et al.,* Defendants-Appellants.

(No. 57584; 

First District (2nd Division)—April 2, 1974.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellants.

Richard F. McPartlin, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This action was brought under the Administrative Review Act[1] to review an order of the Civil Service Commission approving the discharge of plaintiff as a safety inspector for the Division of Safety Inspection & Education, Department of Labor (hereafter the Department). The Circuit Court of Cook County reversed the order of the Commission, and defendants have taken this appeal. The issues presented for review are: (1) whether plaintiff received a fair hearing before the Commission; (2) whether the finding of the Commission, that plaintiff failed to leave inspection forms at five Chicago factories and thereby violated Department procedures, was against the manifest weight of the evidence; and (3) whether the trial judge reversed the order of the Commission without affording defendants an opportunity to be heard in argument.

On April 8, 1971, the Department initiated a discharge proceeding against plaintiff, charging him with failure to comply with the procedure of the Department by not submitting his inspection forms to the individual companies after his inspections, and with falsifying his reports concerning those inspections. Violations with regard to inspections at

---

[1] Ill. Rev. Stat. 1971, ch. 110, par. 264 et seq.

10 companies were listed, and the last charge stated that plaintiff had been suspended for 29 days in August of 1967 for the same reasons.

At the hearing on June 10, 1971, the Department amended the charges by striking violations concerning four of the companies, and the hearing officer, on plaintiff's motion, struck the charge relating to the 1967 suspension, but granted the Department leave to introduce into evidence the record of the suspension as a consideration regarding the action that would be taken in the event plaintiff was found guilty of the charges. Plaintiff agreed to the foregoing.

The Department then immediately called plaintiff as an adverse witness. Plaintiff's counsel objected on the grounds that the Commission had not authorized the implementation of a rule similar to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60), and that plaintiff had a right not to testify against himself. The hearing officer reserved his ruling on the objections raised and required plaintiff to testify. Plaintiff then testified that the last time he visited any of the plants named in the charges for the purpose of inspection was at least a month before the hearing. Counsel for defendants, an assistant Attorney General, was sworn in as a rebuttal witness over plaintiff's objection, and testified that he saw plaintiff at Acme Frozen Food Co., one of the plants mentioned in the charges, the day before the hearing.

Walter Kiltz, the chief state factory inspector, testified that he is plaintiff's supervisor. He stated that the duties of a factory inspector are to go into factories, make inspections and note any violations of the Health & Safety Act. The general procedure is for the inspector to contact a person at the plant, have that person or someone else accompany him during the inspection, discuss the violations noted on the inspection form, and ask for compliance before the violation form is signed. The inspector should then leave the original violation form at the factory and forward two copies to the Department. There is no written rule or regulation requiring the signatures of persons from the factories, but the obtaining of such signatures has been a policy and practice of the Department, and inspectors are informed that the violation form should be so signed. This general procedure was discussed at a monthly meeting of all inspectors, and plaintiff was present at the meeting. Kiltz also testified that plaintiff had been suspended for 29 days in 1967 for failing to submit violation forms to the factories inspected, and for falsifying his reports to the Department. A record of this disciplinary action, and copies of violation forms for the six companies mentioned in the current charges were introduced into evidence.

Evidence was presented as to the charges concerning each of the six companies. Plaintiff then testified as to his visit to each company. For

the purpose of clarity, we will recite the evidence as to each charge. Testimony regarding falsification will be omitted since the hearing officer found plaintiff not guilty of falsification, and this finding is not before us for review. In addition, the hearing officer found that the charge with regard to one of the companies, Acme Frozen Food Co., was not supported by the evidence.

Henry Traum of Traum's Auto Body Shop & Repairs testified that he recognized his signature on a copy of a violation form. He stated that plaintiff was at his shop on February 23, 1971, but that he did not accompany plaintiff on the inspection, and that he signed a blank violation form before any violations were noted. Plaintiff did not leave the violation form with him, and he did not have a copy at his office. He employed only two full-time employees and one part-time employee other than himself. He did not think to look for the violation form after plaintiff departed and did not see it.

Plaintiff testified that following his inspection he placed the form on Traum's desk in Traum's office. The factory is small, and the office was located only 35 to 50 feet from where Traum was standing at that time. Plaintiff waved to Traum who was about 35 to 50 feet away and advised him that he was leaving the form on his desk and then departed.

Vincent Cherry, superintendent of Vischer Products, identified his signature on the violation form shown to him. He testified that he accompanied plaintiff on the inspection tour of the factory on March 5, 1971, and, when the inspection was completed, he signed the violation form. He accompanied plaintiff to the office and then reentered the plant. Plaintiff did not leave the form with him; but he did not look around the office to see whether the form was left there. To his knowledge, he never saw a violation form in the office.

Plaintiff testified that Cherry signed a blank form and accompanied him for part of the inspection, and then was called away. The company was moving equipment, and the factory was in disarray at the time of the inspection. He completed the form while at the plant, and left it on the left hand ledge of a work bench located near the entrance of the factory.

John Hahn, owner of the Usako Motor Service Co., testified that his signature appears on the factory inspection form shown to him, and that he recognized plaintiff as the person who inspected his plant on February 23, 1971. He accompanied plaintiff through his plant, and signed the violation form. The form was not left with him at the time of the inspection. However, on June 6, 1971, someone put a copy of the form on his desk. Hahn testified that he was sure the form was not put on his desk before June 6. On cross-examination Hahn testified that he rented

one-half of the building space to a transmission repair company; he employed three other workers; and he was busy with customers at the time of the inspection.

Plaintiff testified that the factory was "messy" when he made his inspection, and that he did not know that two different companies did business there. He began the inspection with Hahn, but before it was completed, Hahn got in a car and drove away. The plant had two offices with two desks in each office and the offices were very "messy." Plaintiff completed the violation form and left it with an elderly Japanese person.

Alex Wolf, general manager of the building in which Hertzberg & Sons was located, identified his signature on the inspection form. On February 24, 1971, he and plaintiff began the inspection, and, approximately halfway through the tour, plaintiff asked Wolf to sign the form. Plaintiff told him that he would either leave the sheet in the office or mail it to him. Wolf never received the violation form. Wolf testified that other men from the Department of Labor had inspected his premises, and that the usual procedure was that the inspectors would complete the form and leave it or mail it to him.

Plaintiff testified that Wolf signed the form before they began the inspection. Wolf remained with him throughout the inspection, but left before plaintiff completed the form. Plaintiff then left it with a receptionist in the office, and told her he was leaving it for Wolf. There were three girls in the office, but plaintiff did not know the name of the receptionist.

Nola Smith, personnel manager of Alto Manufacturing Co., testified that plaintiff was in her office on September 14, 1970, but made no inspection. Plaintiff asked questions and advised her that there were no violations. She then signed a blank violation form. The form was not left with her, and she never received it. Her office was near the door, and plaintiff came in that door, never entered the plant and left by the same door. A maintenance man was standing near the door at the time of plaintiff's visit. The hearing officer permitted her to testify that plaintiff and a companion visited her again approximately 2 weeks before the hearing, and requested her to testify that the violation form might have been left with someone else at the plant, and that it could have been left with the maintenance man. She stated to plaintiff that she was sure the form was not left with anyone.

Plaintiff testified that he inspected the Alto Manufacturing Co. on September 14, 1970. He did not make the inspection tour with Smith, but with a "big, Polish fellow." Plaintiff stated that Smith was in error

in testifying that he never left the office. Plaintiff left the violation form with the man who took him through the plant.

In his testimony plaintiff further stated that in his 14 years with the Department he "never heard them instructions" that one of the Department's policies was that an inspector was to be accompanied on his inspection tour by someone from the factory. Plaintiff acknowledged on cross-examination that he was aware that he had been suspended in 1967 for failing to leave violation forms at the plants he inspected.

A character witness for plaintiff, Louis Cohen, testified that he was acquainted with plaintiff's reputation in the community for truth and veracity, and that plaintiff's reputation was good.

At the close of the evidence, the hearing officer allowed into evidence plaintiff's earlier testimony as an adverse witness in rebuttal to plaintiff's reputation witness.

On July 9, 1971, the hearing officer submitted his findings to the Commission. Initially he found that the Department's policy governing factory inspection forms was "not entirely clear." However, at the very least, the procedure to be followed was that the form was to be left with someone at the factory.

With regard to the five charges involving Traum Auto Body, Vischer Products Co., Usako Auto Body, E. Hertzberg & Sons, and Alto Manufacturing Co., the hearing officer found that all of the witnesses, who were employed by the companies in positions of authority, testified that they did not receive copies of the inspection reports. The inspections of four of the five companies had been made within a period of 2 days to 2 weeks. The hearing officer found it incredible that "all of these firms, within such a relatively short period of time  *  *  *  could have misplaced a document which cites them for violations of public law." The hearing officer particularly cited the case of Alto Manufacturing Co. where the witness Smith testified that plaintiff never entered the factory. Plaintiff's version with respect to the five inspections was found "to be incredible." Accordingly, the hearing officer found that plaintiff failed to leave copies of his inspection reports with the five companies in violation of the Department's procedures.

The hearing officer also concluded that the evidence supported a finding that plaintiff and a companion had confronted witnesses and advised them that they need not respond to the Commission's subpoenas. He stated that "this is an extremely abhorrant [sic] practice  *  *  *. Besides being in violation of the law, this practice can only have the effect of making Commission hearings ineffective in discovering the truth."

Finally, the hearing officer recommended discharge as the appropriate

action on the basis of the evidence supporting a finding that plaintiff had failed to submit violation forms to the companies, and on the basis of the prior suspension which indicated the "seriousness the Department places upon the rule" and plaintiff's knowledge of that rule.

On August 11, 1971, the Commission adopted the findings and recommendation of the hearing officer. On May 29, 1972, plaintiff appeared in the Circuit Court in an administrative review proceeding. The trial judge stated that he had read "the file and the action," and that plaintiff had not been afforded a fair and impartial trial. The following colloquy ensued:

"Court: You called him as an adverse witness and the first thing you do, in order to prejudice the case, you ask him about some case where he was suspended for 29 days after 18 years of service * * *. Then he went out and talked to witnesses and then you show that this man—there is nothing wrong that this man went out and talked to witnesses. * * *. You started out by calling him as an adverse witness. * * *

You asked him everything but the pertinent things about the case and then you went along trying to prove it in a negative way * * *

I mean, they're all negative. He testified he told you what he did. * * * All right. It is reversed. * * *

Counsel for defendant: Is your honor denying me the right to make at least an argument before you make your judgment?

Court: In reading the record the argument is made. I think it was unfair, it was prejudice. You didn't give him a fair and impartial hearing. * * * I will reverse it. * * *"

█ █ It is well established that a hearing before an administrative agency should be an investigatory proceeding instituted for the purpose of ascertaining and making findings of fact. (*Rutledge v. Department of Registration and Education*, 77 Ill.App.2d 103, 222 N.E.2d 195.) The hearing should reasonably adhere to procedures ordinarily followed in controverted matters. (*Gigger v. Board of Fire and Police Commissioners*, 23 Ill.App.2d 433, 163 N.E.2d 541.) Due process requires a definite charge, adequate notice and a full, fair and impartial hearing. (*Smith v. Department of Registration and Education*, 412 Ill. 332, 106 N.E.2d 722.) The record must show an impartial inquiry into the facts, and it should never appear that the proceedings were aimed at proving the guilt of plaintiff. *Rutledge v. Department of Registration and Education, supra.*

The findings of the administrative agency on questions of fact are prima facie correct (Ill. Rev. Stat. 1971, ch. 110, par. 274); they may be

reviewed only to determine if they are supported by the evidence. (*Smith v. Department of Registration and Education, supra; Zinser v. Board of Fire and Police Commissioners*, 28 Ill.App.2d 435, 172 N.E.2d 33.) It is immaterial that a trial court or this court would reach a different conclusion based upon the evidence. *Bruno v. Civil Service Com.*, 38 Ill.App.2d 100, 186 N.E.2d 108.

Initially, we will consider defendant's contention that plaintiff was afforded a full, fair and impartial hearing. The record indicates that plaintiff was adequately notified of the charges. The comments of the trial judge, however, indicate that plaintiff was prejudiced because evidence was introduced concerning: (1) plaintiff's prior suspension; (2) plaintiff's conversations with witnesses prior to the hearing; and (3) the testimony of plaintiff as an adverse witness when the hearing commenced.

It is clear from the hearing officer's action striking the charge based upon plaintiff's suspension, from the hearing officer's comments during the course of the hearing, and from the findings, that the 1967 suspension was not a basis for determining plaintiff's guilt as to the charge of failing to leave inspection forms at the factories. The suspension was introduced into evidence to show plaintiff's knowledge of the Department's policy and to support the recommendation as to the appropriate action to be taken. We do not find that plaintiff was unduly prejudiced by evidence of the prior suspension.

Two witnesses who testified at the hearing related conversations with plaintiff which occurred after the charges were filed. One witness testified that plaintiff told him that he need not appear at the hearing. The other witness, Nola Smith, testified that plaintiff and a companion told the witness that she need not appear at the hearing and that she could testify that the form might have been left with another person at the factory, perhaps the maintenance man. The said testimony of the former witness was stricken from the record. We recognize that the said testimony of the latter witness (Nola Smith) was irrelevant to the substance of the charges against plaintiff. However, it was relevant to the issue of plaintiff's credibility in his testimony as to those charges. Therefore, this testimony regarding plaintiff's action prior to the hearing, even though it may also have been proof of a violation of a criminal statute, was competent and admissible evidence which could properly be considered by the Commission in determining plaintiff's credibility. In any event, the findings of the hearing officer merely refer to plaintiff's action as an "abhorrant [*sic*] practice."

Plaintiff contended in his complaint for administrative review that his discharge was based upon the hearing officer's conclusion that he had

violated a criminal statute by contacting witnesses. Plaintiff contends that he was denied a fair hearing because he was not informed of this charge prior to the hearing. The record does not reflect that the findings and recommendation of the Commission were based upon plaintiff's conduct after the charges were filed against him. A memorandum to the Commission from the hearing officer dated July 27, 1971, reinforces our conclusion:

> "If the Commission decides to take action in this matter there are, I believe two alternatives. The first course of action is that the Commission may turn the record over to the Cook County State's Attorney for criminal prosecution. * * * The second course of action is that the Commissioin may request the Department of Labor and the Department of Personnel to bring further charges against the individual, based upon his conduct as shown in his record. The second course of action would necessitate another hearing * * *."

The cases cited by plaintiff, *Cartan v. Gregory,* 329 Ill.App. 307, 68 N.E.2d 193, and *In re Buffalo,* 390 U.S. 544, are totally inapposite to the situation in the case at bar.

Finally, we must consider the procedure of calling plaintiff as an adverse witness prior to the introduction of any other evidence. The testimony of plaintiff regarding his last visit to any of the companies, and the testimony of the assistant Attorney General "in rebuttal" were designed to "shed important light on the nature of the proceedings." Plaintiff's counsel objected on the grounds that the hearing officer had no authority to implement a rule similar to section 60 of the Civil Practice Act.

The Civil Service Commission is empowered to provide rules to carry out its powers and duties.[2] (Ill. Rev. Stat. 1971, ch. 127, par. 63b110 (11).) Defendant contends that the calling of a party as an adverse witness is a practice which has always been discretionary with the hearing officer. However, nowhere in its brief does defendant support this contention. We are of the opinion that an administrative agency must act within the rules and regulations which it has enacted.

Defendant argues that, in any event, the error in calling plaintiff to testify did not result in substantial injustice. Defendant's attempt to "shed important light on the nature of the proceedings" must be interpreted as an attempt to impeach the credibility of plaintiff before any testimony was taken. After all the evidence was heard, the hearing officer allowed this testimony into evidence as rebuttal to plaintiff's reputation witness—

---

[2] Subsequent to the hearing in this case, the Civil Service Commission enacted a rule permitting the examination of an adverse party.

a much more limited purpose. The operative findings in this case, on the other hand, are based upon the credibility of testimony regarding plaintiff's leaving inspection forms at each of the factories. Therefore, we are constrained to agree that the procedure did not prejudice plaintiff. (Ill. Rev. Stat. 1971, ch. 110, par. 275(2).) Although we conclude that plaintiff was afforded a fair hearing, we condemn the conduct of the Assistant Attorney General. While acting as counsel for the Department of Labor, a public body, he abandoned his role as advocate and became a witness for the party he was representing without withdrawing from the case. This practice of acting as both advocate and witness has been consistently frowned upon and discouraged by the legal profession. (See Code of Professional Responsibility and Cannons of Ethics, American Bar Association, Cannon 5, E-C 9; *Jonas v. Meyers*, 410 Ill. 213, 101 N.E.2d 509; *Cannella v. Cannella*, 132 Ill.App.2d 889, 270 N.E.2d 114.) In the instant case, this conduct was totally unnecessary and inexcusable.

Based upon the trial court's comments that the Department endeavored to prove its case by negative testimony, and upon the court's reversal of the cause, we assume that the trial court found the findings of the Commission to be contrary to the manifest weight of the evidence. We therefore must also review the findings upon which plaintiff's discharge was based.

The question of fact before the hearing officer was whether plaintiff had left inspection forms with the companies he visited. The persons at the companies who signed the forms testified that plaintiff did not leave the forms with them, nor had they seen the forms in their offices. (1) Traum testified that he did not think to look for the form, but did not see it in his office. Traum did not testify that plaintiff waved to him that he was leaving the form in Traum's office. (2) Cherry testified that he, too, did not search the office, but to his knowledge he never saw the form. (3) Hahn testified that the form was not left on his desk after the inspection or before June 6, 1971. (4) Wolf testified that plaintiff told him he would leave the form in the office or mail it to him. (5) Smith testified that plaintiff remained in the office with her during his entire visit, and did not leave the form with her.

Plaintiff, on the other hand, testified that he left the forms (1) on a desk; (2) on a work bench; (3) with an elderly Japanese; (4) with a receptionist; and (5) with a "big, Polish fellow."

On the basis of this conflicting evidence, the hearing officer found plaintiff's testimony to be incredible, especially in light of the fact that four of the five inspections were made within a period of 2 days to 2 weeks. We cannot conclude that this finding is contrary to the manifest weight of the evidence. We do not agree with the trial court's comment

that the Department proved its case by negative testimony; we also do not agree with the trial court's intimation that plaintiff's testimony was positive and credible. The charge of failure to leave the forms at the companies inspected could only be proved by testimony that the forms were not received by persons at the companies. We are aware that two of the witnesses testified that they did not search for the forms, but we cannot say that the evidence does not support the findings in this case. We note that plaintiff's testimony is hardly positive and certain.

. The cases relied upon by plaintiff are inapposite. In *Deal v. Police Board*, 3 Ill.App.3d 622, 279 N.E.2d 492, plaintiff was charged with leaving her apartment after calling in sick. The only incriminating evidence adduced at the hearing was the testimony of a police officer who went to plaintiff's apartment, rang the doorbell and received no answer. Thereafter, during a period of 3 hours, he attempted to telephone her and received no answer. On administrative review the court decided that that negative evidence alone did not warrant a finding that plaintiff was not at home. However, the fact that plaintiff had called in sick corroborated her uncontradicted testimony that she had been under heavy sedation and did not hear the doorbell or the telephone.

The case at bar is easily distinguishable from *Deal*. Here, a number of witnesses testified that no forms were left at any of the companies within a short period of time. In addition, plaintiff's version of his visits is uncorroborated by the record. Compare *Drezner v. Civil Service Com.*, 398 Ill. 219, 75 N.E.2d 303; *Jordan v. Civil Service Com.*, 4 Ill.App.3d 741, 281 N.E.2d 687.

■■ Finally, we must comment upon the failure of the trial court to allow defendant to argue at the hearing on administrative review. In *Drezner v. Civil Service Com., supra*, the trial court perfunctorily affirmed the decision of the Commission without allowing plaintiff an opportunity to argue. The court stated that reversible error is committed by not reviewing the record thoroughly prior to making a decision.[3] (Accord, *Lion Specialty & Properties, Inc. v. City of Chicago Zoning Board of Appeals*, 107 Ill.App.2d 354, 247 N.E.2d 30.) In *Drezner* and *Lion*, as in the present case, the trial courts had read the records; however, the decisions indicate that a trial court has not satisfied its duties in administrative review actions by merely reading the record. We believe that defendants in administrative review actions, as well as plaintiffs, are entitled to full, fair and independent administrative review

---

[3] The Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 274) provides: "Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed."

hearings. We agree with the court in *Lion* that "the duty of a trial court to conduct a full and fair hearing is independent of the persuasive burden necessary to sustain the action of the administrative agency." 107 Ill.App.2d 354, 362.

■ ■ For the reasons stated herein the judgment of the trial court reversing the decision of the Civil Service Commission is reversed, and thus the Order of the Civil Service Commission is reinstated.

Reversed.

HAYES, P. J., and DOWNING, J., concur.