481 So.2d 61 (1985)
Emilio YERO, M.D., Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICAL EXAMINERS, Appellee.
No. BH-210.
District Court of Appeal of Florida, First District.
December 23, 1985.
Peter R. Lopez, Miami, for appellant.
Joseph L. Shields and William M. Furlow, Dept. of Professional Regulation, Tallahassee, for appellee.
NIMMONS, Judge.
This is an appeal from a final order of the Board of Medical Examiners (the Board), reprimanding the appellant, Emilio Yero, M.D., suspending his license to practice medicine for three months, and imposing a probationary term. We reverse.
Dr. Yero was employed as a psychiatrist by a health maintenance organization. He was not authorized to provide treatment on a private basis outside the organization. Ms. Gibson, the complainant, was a member of the health maintenance organization which provided its members up to twenty psychotherapy sessions per year. Ms. Gibson began treatment under Dr. Yero's care on January 12, 1982. The twenty-visit treatment plan was explained to Ms. Gibson. Dr. Yero diagnosed Ms. Gibson as having "a borderline personality structure," *62 one in which the patient has difficulty in adjusting to reality or emotional situations. Between January 15 and May 7, 1982, Ms. Gibson had 20 treatment sessions with Dr. Yero. At her 19th session, Dr. Yero reminded Ms. Gibson that her psychotherapy treatment program was coming to a close. Her response to this impending termination was to send Dr. Yero a threatening letter stating that she was hurt and angry, and "If I let my anger go, I will write the American Psychiatric Association, your director, INA, and sue."
When Ms. Gibson came in for her last visit on May 7th, she was calm. Dr. Yero explained to her that she was in need of long-term treatment and that there was an absolute need that she see another therapist for long-term treatment. Dr. Yero testified that Ms. Gibson seemed to understand and "left quietly at that point." He testified that she was apologetic and not threatening. Dr. Yero also testified that this May 7th visit represented the termination of the physician-patient relationship.
Dr. Yero admits that sometime after the May 7th visit terminating treatment, and after threats to himself, his family, and his property, he succumbed to Ms. Gibson's demands and did in fact have sexual intercourse with Ms. Gibson at a hotel in Coral Gables on three or four occasions between the middle or end of June 1982 and October or November 1982.[1] Ms. Gibson testified that Dr. Yero made sexual advances towards her beginning in March or early April 1982 and that they had intercourse thereafter at various times and at various places until January 1983. She testified that she was in love with Dr. Yero and that their intimacies were a result of that affection.
On December 14, 1982, Dr. Yero unexpectedly received a call from his receptionist informing him that a lady wanted to see him. Since he had no appointments scheduled at that time, he instructed that the lady be shown to his office. It was Ms. Gibson. Dr. Yero testified that her visit was brief. He told her that it was not convenient for him to see her and that there was no reason for her to be there. She left without further incident. Dr. Yero made a record of this unscheduled visit and marked Ms. Gibson's file "closed."
In September of 1984, in response to a complaint filed by Ms. Gibson, the Department of Professional Regulation filed a three count Complaint with the Board against Dr. Yero. Count one alleged violations of Sections 458.329 and 458.331(1)(x), Florida Statutes (1983) for sexual misconduct with a patient. Count two alleged a violation of Section 458.331(1)(k) which prohibits exercising influence within a patient-physician relationship for purposes of engaging in sexual activity with a patient. Count three alleged malpractice, a violation of Section 458.331(1)(t).
In his findings of fact, the hearing officer found that the Department failed to establish that the physician-patient relationship extended beyond May 7, 1982 and to establish that any sexual intercourse occurred before the termination of that professional relationship. The hearing officer further found that the evidence failed to establish that Dr. Yero used the physician-patient relationship to induce Ms. Gibson to engage in sexual activity.[2] The hearing officer also found that the evidence failed to establish that Dr. Yero exercised influence within a physician-patient relationship for purposes of engaging a patient in sexual activity.[3] The hearing officer *63 concluded that the Department failed to prove any violation of Sections 458.329, 458.331(1)(x), 458.331(1)(k) or 458.331(1)(t)[4] and recommended a dismissal of the administrative complaint.
The Board's final order accepted all of the hearing officer's findings of fact except that it rejected his findings that the physician-patient relationship did not continue after May 7, 1982, and that no sexual intercourse occurred before the termination of that relationship. Instead, the Board substituted the following finding:
However, the uncontroverted evidence is that Ms. Gibson saw Dr. Yero at his office on December 14, 1982 and it was on that date that her case was marked "closed" by the Respondent. Thus, it is clear that Respondent's own records establish that the physician-patient relationship did not terminate until at least December 14, 1982. In light of Respondent's own admission to the existence of a sexual relationship with Ms. Gibson prior to December 1982, the Board finds that there was sexual activity between Ms. Gibson and Dr. Yero while the physician-patient relationship was in existence.
The Board erred in making the above substituted finding. The evidence was such that the hearing officer could properly find that the physician-patient relationship did not extend beyond May 7, 1982. This finding is supported by Dr. Yero's testimony as to what was discussed on the May 7th visit, the fact that there was an understanding that treatment was limited to only 20 visits, and Dr. Yero's testimony concerning the December 14th visit to the effect that he only saw her long enough to tell her that there was no reason for her to be there and to ask her to leave.
In the determination of whether the physician-patient relationship continued beyond May 7th, the Board and the parties relied upon ordinary methods of proof involving the weighing of the evidence and credibility of the witnesses. This is the province of the hearing officer. The Board's substituted finding represents an improper reweighing of the evidence.
Because the Board based its final order on its substituted finding, the Board found it unnecessary to reach the question of whether Dr. Yero was guilty of violating either Section 458.329 or 458.331(1)(k) by engaging in sexual activities with Ms. Gibson after the termination of the physician-patient relationship.[5] The hearing officer correctly concluded that the occurrence of the sexual activities after the termination of the physician-patient relationship would not necessarily insulate the physician from being proceeded against under either of the above statutes. However, the hearing officer went on to find, as pointed out earlier in this opinion, that the evidence failed to establish that Dr. Yero either used the physician-patient relationship to engage in sexual activity or exercised influence within a physician-patient relationship for purposes of engaging a patient in sexual activity. This was a factual finding of the hearing officer which was supported by competent substantial evidence and thus entitled to the same deference as the hearing officer's other findings discussed above.
Accordingly, the Board's final order is reversed and remanded for the entry of a final order dismissing the Department's complaint in accordance with the hearing officer's recommended order.
REVERSED AND REMANDED.
ERVIN and SMITH, JJ., concur.
NOTES
[1] Although the hearing officer did not reject the testimony of Dr. Yero concerning Ms. Gibson's harrassment of, bizarre conduct towards, and threats made to him, the hearing officer did reject Dr. Yero's explanation that he "succumbed" to Ms. Gibson's demands for sexual intercourse.
[2] Section 458.329, prohibits "sexual misconduct in the practice of medicine" which conduct is defined to include a physician's use of the physician-patient relationship to induce a patient to engage in sexual activity. Section 458.331(1)(x) includes as a ground for disciplinary action the violation of any provision of Chapter 458.
[3] Section 458.331(1)(k) provides as a ground for disciplinary action a physician's "exercising influence within a patient-physician relationship for purposes of engaging a patient in sexual activity."
[4] Section 458.331(1)(t) includes malpractice as a ground for disciplinary action. We need not discuss further this malpractice ground inasmuch as the Board's final order accepted the recommended order's finding that such section was not violated.
[5] The Board's final order states:

"At all times pertinent to the allegations, [Ms.] Gibson was a patient of Respondent. In light of that, the legal issue [presented by the] ... sexual activity [occurring] ... after the physician-patient relationship terminates need not be ruled upon in this case."