JOSEPH CICMANEC, Plaintiff-Appellant, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

First District (1st Division) No. 1—88—1632

Opinion filed April 24, 1989.

Augustine & Kern, Ltd., of Chicago (Alan Rhine, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This is an administrative review action. Plaintiff, Joseph Cicmanec, a chiropractor, appeals from an affirmance by the circuit court of an order entered by the Department of Registration and Education, now known as the Department of Professional Responsibility (the Department), which found that plaintiff had engaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public in violation of section 16(5) of the Medical Practice Act (the Act) (Ill. Rev. Stat. 1985, ch. 111, par. 16(5)), and which suspended plaintiff's chiropractor license for two years with the concurrent requirement of 100 hours of continuing medical education, followed by two years of probation.

On appeal, plaintiff contends that: (1) the three-year statute of limitations set forth in section 16(5) of the Act deprived the Department of jurisdiction to review the propriety of plaintiff's diploma from CETEC and his applications to take the ECFMG exam; (2) the Department admitted prejudicial evidence at the hearing which was barred by the Act's three-year limitations period; and (3) the Department's findings of fact failed to establish that plaintiff had engaged in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public in violation of section 16(5) of the Act. For the following reasons, the judgment of the circuit court is affirmed.

The underlying facts are undisputed. In 1978, plaintiff was issued a license to practice as a chiropractor in Illinois. Shortly thereafter, he was also issued a license to practice in California, where he practiced as a chiropractor from May 1979 through late November 1982. On June 2, 1982, plaintiff applied for admission to the CETEC University School of Medicine, located in the Dominican Republic. Plaintiff's application to CETEC was accepted on July 21, 1982, with an expected graduation date of June 1983. Plaintiff paid $20,000 to CETEC for tuition between June 1982 and December 1982. Without attending any medical school classes or doing any clinical work under the auspices of CETEC or any other medical school, plaintiff received a medical diploma from CETEC on January 31, 1983.

Before receiving his CETEC diploma, plaintiff applied to take the ECFMG exam, a qualifying exam for graduates of foreign medical schools seeking licensure as a medical doctor in the United States, ad-

ministered by the Educational Commission for Foreign Medical Graduates. A foreign student is qualified to take the exam after attending medical school for two years. On the ECFMG application, plaintiff falsely stated that he had attended CETEC from 1979 to 1983 and that he had graduated from college in 1977, rather than 1973.

In January 1983, plaintiff took the ECFMG exam and failed it. The following April, plaintiff reapplied for the exam. On the second application, plaintiff repeated the false statements regarding his education. Plaintiff sat for the ECFMG exam on February 29, 1984, but failed it again. In September 1984, plaintiff returned to California, bought back his chiropractor business and resumed that profession.

On January 21, 1986, the Department filed a complaint against plaintiff seeking revocation or suspension of his Illinois license as a chiropractor for violation of section 16(5) of the Act on the grounds that in June 1982, plaintiff agreed to pay CETEC approximately $20,000 and received a diploma from CETEC in January 1983 without having done anything other than pay money. Thereafter, on September 19, 1986, the Department filed an amended complaint which realleged the original allegations, plus referred to the misrepresentations plaintiff had made on his ECFMG exam applications in October 1982 and April 1983.

On November 17, 1986, an evidentiary hearing was held before the Medical Disciplinary Board of the Department. On February 4, 1987, the Board issued its order, which set forth the following findings of fact:

(1) During June 1982, plaintiff agreed to pay CETEC $20,000 to obtain a Medical Doctor (M.D.) degree, from CETEC University, School of Medicine.

(2) Plaintiff received a Medical Doctor (M.D.) Degree from CETEC on January 31, 1983.

(3) Plaintiff did nothing more than pay money to get the degree.

(4) Plaintiff applied to take the ECFMG exam in October 1982 and April 1983.

(5) The successful passage of the ECFMG exam is a necessary step in the process to become a licensed physician in Illinois.

(6) On both ECFMG applications, plaintiff falsely stated his years of attendance at CETEC.

(7) Plaintiff misrepresented himself to the ECFMG as a medical doctor.

(8) Pursuant to his applications, plaintiff was allowed to sit

for the ECFMG exams on January 26, 1983, and February 29, 1984.

As a result, the Board made the following conclusions of law:

 (1) The Board has jurisdiction; and

 (2) Plaintiff violated section 16(5) of the Act.

The Director of the Department adopted the Board's findings of fact and conclusions of law. Plaintiff appealed the Department's order to the circuit court on administrative review. The circuit court affirmed. Plaintiff's timely appeal to this court followed.

Plaintiff contends that the three-year statute of limitations set forth in section 16 of the Act deprived the Department of jurisdiction to review the propriety of plaintiff's diploma from CETEC and his applications to take the ECFMG exam.

Section 16 of the Act states, in pertinent part:

 "All proceedings to suspend, revoke, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to a license or certificate on any of the foregoing grounds *** must be commenced within 3 years next after the conviction or commission of any of the acts described therein, *** but the time during which the holder of the license or certificate was outside the State of Illinois shall not be included within the 3 years." Ill. Rev. Stat. 1985, ch. 111, par. 4433(27).

Initially, in arguing this contention on appeal, plaintiff avoids any reference to that part of section 16 which refers to the period of time that the holder of the license was outside Illinois (the outside-Illinois exception). Instead, plaintiff focuses on the three-year period and claims that the agreement to "purchase" a medical degree referred to in the original complaint (filed January 21, 1986) and the applications to the ECFMG referred to in the amended complaint (filed September 19, 1986) occurred more than three years prior to the filing of the respective complaints. Thus, plaintiff argues, the Department lacked jurisdiction over the matter.

In response, the Department argues that (1) the latter part of section 16, which allows the period of time that the licensee spent outside of Illinois to be excluded from calculating the limitations period, applies to the present situation and the filing of both complaints was timely; and (2) in the alternative, pursuant to the relation-back doctrine, the amended complaint was timely.

■ Regarding the outside-Illinois exception to section 16, the facts support the Department's argument. Plaintiff admits that from May 1979 through November 20, 1982, he resided and practiced as a

chiropractor in California. Plaintiff resided in Illinois from November 21, 1982, through September 1, 1984, when he returned to California and resided and practiced there through November 17, 1986. Thus, throughout the period in question, plaintiff resided in Illinois for approximately 22 months.

In his reply brief, plaintiff does not dispute the applicability of the outside-Illinois exception to the present situation. However, in reliance on *Skale v. Department of Public Aid* (1987), 165 Ill. App. 3d 776, 520 N.E.2d 749, he claims that the Department is barred from raising the exception on appeal because it failed to raise the exception before the administrative agency. In *Skale*, the Department of Public Aid (DPA) terminated plaintiff doctor's participation in the Medical Assistance Program and found that plaintiff owed the DPA $73,207.04. The penalty resulted from an audit made by the DPA of plaintiff's charges for services rendered between July 1979 and December 1980. As the result of plaintiff's failure to submit complete records, the DPA notified him of its intent to terminate him from its program and to recover the undocumented charges. Plaintiff requested a hearing. The hearing officer concluded that the documentation submitted was insufficient and recommended termination and recoupment. The Department adopted the hearing officer's recommendations.

At trial on administrative review, plaintiff alleged that the DPA had violated its own regulations when it had requested records that were more than three years old and that approximately 60% of the missing records were for that period. The court found that plaintiff had waived his objections on those grounds by failing to raise them at the Department hearings. The appellate court affirmed, citing the general rule that defenses or issues not raised before an administrative agency may not be considered on review. "This rule prevents unfair surprise and it allows the administrative agency to have the opportunity to construe rules and statutes which most directly concern the agency's operations." 165 Ill. App. 3d at 780.

■ ■ The rule enunciated in *Skale* regarding agency proceedings is similar to that regarding trial court proceedings wherein an appellant may not raise an issue or defense for the first time on appeal. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285.) However, plaintiff overlooks the fact that the *Skale* rule and the *Shaw* rule apply to appellants, not appellees. An appellee may raise any point in support of judgment on appeal even though not directly ruled on by the trial court, provided that the factual basis for such point was before the trial court. (*Shaw v. Lorenz*, 42 Ill. 2d 246, 246 N.E.2d 285.)

Thus, because section 16 was before both the Department and the trial court and the periods of time during which plaintiff lived outside Illinois is undisputed and of record, the issue regarding the outside-Illinois exception is properly before this court.

 █ Further, it is axiomatic that in construing a statute, courts examine the entire statute and give effect to each word, clause or sentence that allows for consistency and reasonableness. (*Potts v. Department of Registration & Education* (1986), 145 Ill. App. 3d 960, 496 N.E.2d 253.) In the present case, plaintiff argues that section 16 is clear and unambiguous on its face and should be so interpreted. Yet, in direct contradiction to that assertion, he asks this court to interpret the limitations portion of section 16 without giving full force and effect to the entire provision, *i.e.*, the outside-Illinois exception. For the aforementioned reasons, we conclude that the Department timely filed its complaint and amended complaint and that the Department had jurisdiction. Our determination that the outside-Illinois exception applies to the facts at bar obviates the need to address the Department's alternative argument regarding the relation back doctrine.

With respect to plaintiff's contention that he was unduly prejudiced by the Department's admission of evidence of actions that had occurred beyond the three-year limitations period of section 16, our determination that application of the outside-Illinois exception of section 16 of the Act brings all of plaintiff's actions regarding the CE-TEC diploma and the ECFMG applications within the limitations period of section 16 renders this issue moot.

 Next, plaintiff alleges that the findings of fact fail to establish that he had engaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public in violation of section 16(5) of the Act. Because the revocation or suspension of a professional license involves serious consequences to both the licensee and the public, charges must be specific and the proof clear and convincing. (*Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722.) Upon review, the findings of an administrative agency on questions of fact are held to be *prima facie* true and correct (Ill. Rev. Stat. 1985, ch. 110, par. 3—110) and are not to be disturbed unless they are contrary to the manifest weight of the evidence. (*United Air Lines, Inc. v. Illinois Fair Employment Practices Comm'n* (1979), 69 Ill. App. 3d 519, 387 N.E.2d 875.) However, even if the Board's findings of fact are correct, its determination as to the legal effect of those facts may be incorrect. (*Gee v. Board of Review of the Department of Labor* (1985), 136 Ill. App. 3d 889, 483 N.E.2d 1025.) For a judgment to be contrary to the mani-

fest weight of the evidence, an opposite conclusion must be clearly evident. (*United Air Lines, Inc. v. Illinois Fair Employment Practices Comm'n*, 69 Ill. App. 3d 519, 387 N.E.2d 875.) Further, where a broad statutory standard such as section 16(5) has been delegated to an agency's discretion, the reviewing court should rely on the agency's interpretation as controlling whenever there is reasonable debate as to its meaning. *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 376 N.E.2d 82.

In the present case, plaintiff's purchase of a medical degree from CETEC without attending classes and his misrepresentations on his ECFMG applications as to the dates on which he attended both college and CETEC were found to violate section 16(5) of the Act, which states:

> "5. Engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." (Ill. Rev. Stat. 1985, ch. 111, par. 4433(5).)

Plaintiff argues that in order to be found in violation of section 16(5), three distinct elements must be proven: (1) he engaged in dishonorable, unethical or unprofessional conduct; and (2) the conduct was likely to deceive, defraud or harm; (3) the public. Apparently plaintiff concedes that the first element was established, because he specifically contends that the Department failed to introduce any evidence with respect to the second and third elements. Plaintiff argues that the mere potential to misuse a diploma is not sufficient under section 16(5) for imposition of discipline. Rather, there must be a positive act, or a "showing of conduct" likely to deceive. Plaintiff offers no legal authority for this argument. Instead, he argues that because he never practiced as or held himself out to be a licensed physician or applied for a physician's license, the mere fact he held a diploma was not likely to deceive the public.

In our view, plaintiff's contention that the potential to deceive is not subject to discipline until that potential results in a positive act is contradictory to the clear, unambiguous language of section 16(5). The clear meaning of the section's language "likely to" is that the mere potential to deceive, defraud or harm the public is sufficient to violate the Act. Thus, the public does not have to have been actually harmed. In the present situation, we concur with the Department's position that the mere fact that plaintiff has the medical diploma allows him the opportunity to display the diploma in his office, thereby suggesting to the public that he has professional capabilities beyond that of a chiropractor. Thus, the unethical purchase of the diploma without having attended classes or having performed any clini-

cal work has the likelihood of deceiving the public into believing that plaintiff has received his medical degree. Whether plaintiff actually displayed the diploma is irrelevant. No positive act of deceiving the public is required. We note that this high standard of honesty and integrity imposed on the medical profession is similar to that standard imposed on the legal profession by Canon 9 of the Code of Professional Responsibility (107 Ill. 2d Canon 9), which requires lawyers to avoid even the appearance of professional impropriety.

Finally, in his reply brief, plaintiff argues that Rule 290.35, effective June 7, 1983, which sets forth standards the Board is to consider in determining what constitutes conduct in violation of section 16(5) of the Act, cannot be applied retroactively to the situation at bar. In addressing this issue, plaintiff notes that this argument was not raised before the Department or before the trial court and, thus, is waived. We agree with plaintiff's waiver argument and, accordingly, decline to address the issue on appeal. However, our decision to waive this issue does not alter our final determination, which is predicated on the clear, unequivocal language of section 16(5) of the Act.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.