2020 IL App (1st) 191059-U
Order filed: June 30, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-1059

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ALAN H. OLEFSKY, M.D., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 2335 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF FINANCIAL AND | ) | Honorable |
| PROFESSIONAL REGULATION; CECILIA ABUNDIS, | ) | Sophia Hall, |
| Acting Director of The Division of Professional Regulation | ) | Judge Presiding. |
| of The Illinois Department of Financial and Professional | ) | |
| Regulation; and BRENT E. ADAMS, Secretary of | ) | |
| The Illinois Department of Financial and | ) | |
| Professional Regulation, | ) | |
| | ) | |
| Defendants-Appellees and Cross-Appellants. | ) | |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman concurred in the judgment.
Justice Delort specially concurred.

**ORDER**

¶ 1    *Held*:    Administrative agency's determination that plaintiff's medical license should be indefinitely suspended for a minimum of two years is affirmed, where that decision was not an abuse of the Department's discretion.

¶ 2    Plaintiff-appellant, Alan H. Olefsky, M.D., brought this action for administrative review

against defendants-appellees, the Illinois Department of Financial and Professional Regulation;

Cecilia Abundis, Acting Director of the Division of Professional Regulation of the Illinois

No. 1-19-1059

Department of Financial and Professional Regulation; and Brent E. Adams, Secretary of the Illinois Department of Financial and Professional Regulation (collectively, the Department), seeking reversal of the Department's conclusion that plaintiff's medical license should be indefinitely suspended for a minimum of one year due to multiple violations of the Medical Practice Act of 1987 (the Act). 225 ILCS 60/1 *et seq.* (2014).[1] The Department filed a cross-appeal, contending that this court should instead reinstate a minimum two-year suspension that had been imposed upon plaintiff prior to being rejected by the circuit court upon administrative review. For the following reasons, we affirm the two-year suspension.[2]

¶ 3   The record reflects that plaintiff was first licensed as a physician in Florida in 1987 and in Illinois in 1988.[3] The record also reflects that plaintiff has a significant history of drug and alcohol abuse, as well as related discipline with respect to his state and federal medical licenses and permits.

¶ 4   In 1989, plaintiff presented two forged prescriptions for a fictitious patient to a pharmacy in Florida. While plaintiff was acquitted of criminal charges brought by the State of Florida, the incident resulted in the federal Drug Enforcement Agency (DEA) revoking plaintiff's federal registration and permit to prescribe controlled substances in 1992. As a result of this action taken by the DEA, the Department's predecessor and plaintiff agreed to the entry of a consent order placing plaintiff's Illinois medical license on probation for one year.

---

[1] Pursuant to section 2–1008(d) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2–1008(d) (West 2012)), we have amended the caption to correctly reflect the current department acting director. On our own motion, we hereby substitute her as a party as shown above.

[2] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[3] Portions of this order have been taken from a prior decision entered by this court in this matter.

¶ 5 Between 2002 and 2004, after plaintiff regained his DEA registration, he issued a number of false prescriptions for controlled substances in the names of others for his personal use. He was also convicted for driving under the influence. These incidents led the Department to temporarily suspend plaintiff's medical license and his Illinois controlled substance license. In November 2006, the Department and plaintiff agreed to the entry of a second consent order placing plaintiff's medical license on probation for a minimum of five years. The conditions of that probation required plaintiff to, *inter alia*, abstain from alcohol and submit quarterly reports as to his compliance with his probation. However, in January 2007, plaintiff was hospitalized for alcohol poisoning, which led the Department to again temporarily suspend plaintiff's medical license.

¶ 6 In May 2007, the Department and plaintiff agreed to the entry of a third consent order which again placed plaintiff's medical license on probation for a minimum of five years, to begin at the conclusion of an additional period of temporary suspension. Conditions of that probation again required plaintiff to submit quarterly reports as to his compliance with his probation. This probationary period began in December 2007, when plaintiff's license was restored to active status.

¶ 7 The record also reflects that plaintiff twice applied to again obtain a DEA registration to prescribe controlled substances. His first attempt was denied in a final order entered in August 2007 (2007 DEA order), while the second application was denied in a final order entered in April 2011 (2011 DEA order). The DEA's decision in each instance was based, in part, upon the DEA's conclusion that the public interest would not be served by granting a registration to plaintiff in light of his extensive history of alcohol and drug use and his fraudulent use of false prescriptions. Moreover, while plaintiff waived his right to a hearing with respect to the denial of his initial application, the 2011 DEA order was entered only after an administrative hearing at which plaintiff was found to have provided false testimony.

¶ 8    In June 2013, the Department initiated the proceedings at issue here by filing an administrative complaint against plaintiff seeking further discipline with respect to his Illinois medical license and Illinois controlled substance license. The operative, two-count, second amended complaint was filed in July 2014. In count I, the Department alleged that plaintiff had failed to report the 2007 DEA order to the Department, either in any of the quarterly reports he was required to file pursuant to his probation, or in his 2008 application for the renewal of his Illinois medical license, in violation of sections 22(A)(9), 22(A)(12), 22(A)(15), and 22(A)(34) of the Act. 225 ILCS 60/22(A)(9), 22(A)(12), 22(A)(15), 22(A)(34) (West 2014). In count II, the Department alleged that plaintiff had failed to report the 2011 DEA order to the Department, either in any of the quarterly reports he was required to file pursuant to his probation, or in his 2011 application for the renewal of his Illinois medical license, in violation of sections 22(A)(9), 22(A)(12), 22(A)(15), and 22(A)(34) of the Act. *Id*. In each count, the DEA asserted that these failures required that plaintiff's medical license and Illinois controlled substance license be "suspended, revoked, or otherwise disciplined." Plaintiff did not file an answer to this administrative complaint.

¶ 9    An evidentiary hearing was held before an administrative law judge (ALJ) in July 2014. The Department called plaintiff and Temple Hall, the Department probation compliance investigator assigned to plaintiff, as witnesses. The Department also introduced numerous exhibits into evidence, which included extensive documentary evidence regarding defendant's prior federal and Illinois disciplinary proceedings, the three prior consent orders, the 2007 and 2011 DEA orders, the quarterly reports filed by plaintiff in accordance with his probation, and plaintiff's 2008 and 2011 applications for renewal of his Illinois medical license. Plaintiff testified briefly on his own behalf and entered a single document into evidence.

¶ 10    The evidence presented at the hearing demonstrated that plaintiff never explicitly informed the Department of the 2007 or 2011 DEA orders denying his applications for DEA registration. Ms. Hall specifically testified that this information was not contained in any of plaintiff's quarterly reports, and that neither plaintiff, nor anyone on his behalf notified her of those orders in any other manner. This was despite the fact that plaintiff's quarterly reports required him to indicate whether or not he had "been terminated/suspended/disciplined, [or] been denied/lost privileges or resigned," and to provide a "detailed explanation" to any affirmative answer to that question. Ms. Hall did testify that two quarterly reports for 2010 could not be located in the Department's files, and they were, therefore, not presented at the hearing. Ms. Hall also testified that any communications received from plaintiff or his attorney should be in the Department's files.

¶ 11    In addition, neither DEA order was reported on the face of plaintiff's 2008 or 2011 applications for renewal of his Illinois medical license. This is despite the fact that the 2008 application specifically required plaintiff to indicate if he had been denied a license or permit in the last three years and to "attach" a "detailed explanation" for any affirmative response. While in his 2008 renewal application plaintiff affirmatively responded "yes" to this question, he merely stated that an explanation was "submitted [and] on file." The 2008 renewal application introduced by the Department contained no attachment containing a detailed explanation.

¶ 12    For his part, plaintiff affirmatively testified that he did inform the Department about the 2007 DEA order, but his testimony about how this occurred was vague and inconsistent. He alternatively testified that he "believed" or "assumed" that his attorney provided that information. He provided similarly vague and inconsistent testimony regarding how the Department was notified of the 2011 DEA order. Plaintiff introduced an unsigned, undated document into evidence at the hearing that contained a narrative of his disciplinary history from 1989 to 2007. While this

narrative did disclose the 2007 DEA order, it made no mention of the 2011 DEA order. Once again, plaintiff testified that he "believed" that it had been prepared by his attorney and provided to the Department. Plaintiff provided no other proof as to when or how this document was transmitted to the Department, or any evidence that it was actually received. The only date on the document itself was an indication that it had been faxed in 2014, well after the Department initiated this administrative action against plaintiff.

¶ 13    In September 2014, the ALJ entered a written report and recommendation that plaintiff be found to have committed six violations of four separate sections of the Act. These included the violations of sections 22(A)(9) and 22(A)(34) at issue on appeal.

¶ 14    With respect to section 22(A)(9), which provides that discipline may be imposed for a doctor's "[f]raud or misrepresentation in applying for, or procuring, a license under this Act or in connection with applying for renewal of a license under this Act" (225 ILCS 60/22(A)(9) (West 2014)), the ALJ concluded that plaintiff improperly failed to report the 2007 DEA order in his 2008 renewal application. In coming to this conclusion, the ALJ specifically relied upon the documentary evidence, the testimony of Ms. Hall, and its conclusion that plaintiff was evasive and his testimony was inconsistent, based on conjecture, and not credible. The document plaintiff presented was also found to be nothing more than a "self-serving" statement, with plaintiff's testimony regarding the document found to be incredible. In the end, the ALJ concluded that the Department presented evidence that the 2007 DEA order was never reported in plaintiff's 2008 renewal application, and that plaintiff simply failed to present any credible evidence that he had properly reported the 2007 DEA order in his 2008 renewal application. However, the ALJ specifically found plaintiff did not violate section 22(A)(9) of the Act by failing to report the 2011

DEA order in his 2011 application for renewal of his Illinois medical license, as it was not clear from the record that plaintiff actually learned of that order prior to filing the 2011 application.

¶ 15    With respect to section 22(A)(34) of the Act, which provides that the Department may impose discipline for the "failure to report to the Department any adverse final action taken against them by another licensing jurisdiction, *** by any governmental agency, by any law enforcement agency, or by any court for acts or conduct similar to acts or conduct which would constitute grounds for action as defined in this Section," (225 ILCS 60/22(A)(34) (West 2014)), the ALJ concluded that plaintiff twice violated this section by failing to report the 2007 and 2011 DEA orders to the Department. Specifically, plaintiff failed to report these orders in his 2008 or 2011 license renewal applications or in any of his quarterly probation reports. The ALJ's conclusion was supported by similar factual and credibility determinations as discussed above, with the ALJ again indicating that it found plaintiff's evidence and testimony incredible.

¶ 16    In light of his findings and conclusions, the ALJ recommended that plaintiff's medical license be indefinitely suspended for a minimum of three years.

¶ 17    In October 2014, the Department's Medical Disciplinary Review Board adopted the ALJ's findings, conclusions, and recommendations, and recommended that the Director of the Department do likewise. Plaintiff filed a petition for rehearing, and that petition was denied by the Department's Director in a written order entered in December 2014. That order also indefinitely suspended plaintiff's medical license for a minimum of three years.

¶ 18    Plaintiff filed an action for administrative review in January 2014, seeking reversal of the Department's conclusions that he had violated the Act and that his license should, therefore, be suspended. After full briefing by the parties, the circuit court issued a written decision in August 2015, in which it confirmed the Department's decision in part and reversed it in part. Specifically,

the circuit court found that plaintiff was properly found to have: (1) violated section 22(A)(9) once by improperly failing to report the 2007 DEA order in his 2008 renewal application, and (2) violated section 22(A)(34) twice by failing to report the 2007 and 2011 DEA orders in his 2008 or 2011 license renewal applications, or in any of his quarterly probation reports. The remaining three statutory violations of sections 22(A)(12) and 22(A)(15) of the Act found by the Department were found to be unfounded. The written decision was silent with respect to plaintiff's request that the discipline imposed by the Department be reversed.

¶ 19    Plaintiff filed a motion for reconsideration and clarification in which he asked the circuit court to reverse its decision to affirm the Department's finding with respect to the violations of sections 22(A)(9) and 22(A)(34) of the Act and the suspension of his license, or to clarify the proper discipline, if any, to be imposed by the Department in light of the circuit court's partial reversal. The circuit court denied plaintiff's motion, and plaintiff filed a prior appeal.[4]

¶ 20    In a previous order, we affirmed the circuit court's decision to confirm the Department's conclusion that plaintiff committed only three total violations of sections 22(A)(9) and 22(A)(34) of the Act, and remanded this matter to the Department for reconsideration of the appropriate discipline to be imposed for those three confirmed violations. *Olefsky v. The Illinois Department of Financial and Professional Regulation*, 2016 IL App (1st) 152843-U, ¶ 65. We explicitly expressed "no opinion on what, if any, modification to the discipline should be made in light of reversal of some of the violations on administrative review." *Id.* ¶ 64.

¶ 21    In a March 2017 written order entered upon remand, the Department concluded that all the factors supporting its original three-year suspension remained in place, except that the total number

_____

[4]    The circuit court also entered a stay of the Department's order. Through the entry of subsequent stays, the suspension of plaintiff's license remains stayed pending the outcome of this appeal.

of confirmed violations of the Act had been reduced from six to three. Finding that this reduction warranted a corresponding reduction in the discipline imposed upon plaintiff, the Department entered an order that indefinitely suspended plaintiff's medical license for a minimum of two years.

¶ 22    Plaintiff again sought administrative review, and in January 2018 the circuit court reversed this decision and remanded the matter to the Department for further reconsideration of the appropriate discipline to be imposed upon plaintiff. The circuit court concluded that a two-year suspension of plaintiff's license was "not appropriate" in light of lesser sanctions imposed by the Department in other situations, including other cases referenced by plaintiff for the first time in the circuit court upon his second request for administrative review.

¶ 23    Thereafter, the Department issued its final administrative order in April 2018. Therein, under protest and "only in an effort to comply with the Court's remand and to move the case forward," the Department further reduced its sanction by indefinitely suspending plaintiff's medical license for a minimum of one year.

¶ 24    Plaintiff again sought administrative review of this decision in the circuit court. After extensive briefing, which again involved plaintiff citing to and comparing his case with other Department decisions imposing lesser sanctions in purportedly similar or even more egregious circumstances, the circuit court affirmed the one-year suspension of plaintiff's license in April 2019. While the circuit court stated that it was convinced that the comparable cases cited by plaintiff warranted a different result, it found that it was precluded from considering these cases because they were not presented to the Department below and where therefore not a part of the administrative record. Therefore, the circuit court concluded "I have to affirm."

¶ 25    Plaintiff filed a timely appeal from that decision. Thereafter, the Department filed a timely cross-appeal, in which it challenged the circuit court's prior reversal of its decision to sanction plaintiff with a suspension of his medical license for a minimum of two years.

¶ 26    On appeal, plaintiff contends the discipline ultimately imposed upon him by the Department—a one-year suspension of his medical license—was excessive and should be reversed. In its cross-appeal, the Department asks us to affirm its initial decision upon remand to suspend plaintiff's medical license for a minimum of two years.

¶ 27    For the following reasons, we agree with the Department that its initial imposition of a minimum two-year suspension of plaintiff's medical license upon remand should be affirmed. As such, any consideration of the circuit court proceedings subsequent to that decision, and the Department's subsequent imposition of a one-year suspension—under protest—have been rendered moot. *In re Jonathan P*., 399 Ill. App. 3d 396, 400 (2010) ("Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.").

¶ 28    Our review of the Department's final administrative decision is governed by the Administrative Review Law. 735 ILCS 5/3-101, *et seq*. (West 2014); 225 ILCS 60/41(a) (West 2014). While our review extends to all questions of law and fact presented by the record (735 ILCS 5/3-110 (West 2014)), "[i]n administrative cases, our role is to review the decision of the administrative agency, not the determination of the circuit court." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006).

¶ 29    The standard of review we apply to the issues before us depends on the question presented. In general, a reviewing court defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest. *Massa v. Department of*

*Registration & Education*, 116 Ill. 2d 376, 388 (1987). As such, the standard of review is whether the Department abused its discretion in the imposition of the sanction. *Danigeles v. Illinois Department. of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 93.

¶ 30    In addition, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2018). Moreover, "[i]t is not our function to reevaluate witness credibility or resolve conflicting evidence." *Parikh v. Division of Professional Regulation of Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 28. Furthermore, "under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden. *Marconi*, 225 Ill. 2d at 532-33.

¶ 31    We begin by addressing several preliminary issues, beginning with what plaintiff claims to be a "jurisdictional" issue.

¶ 32    Specifically, plaintiff notes that while he has now been found to have committed three violations of the Act, only one of those remaining violations was contained in count II of the operative complaint, a confirmed violation of plaintiff's responsibility to report the 2011 DEA order to the Department, in violation of section 22(A)(34) of the Act. Plaintiff then cites to section 23 of the Act, which provides that "[w]hen the Department has received written reports concerning incidents required to be reported in items (34), (35), and (36) of subsection (A) of Section 22, the licensee's failure to report the incident to the Department under those items shall not be the sole grounds for disciplinary action." 225 ILCS 60/23 (West 2018). In light of this statutory language, plaintiff contends that "this Court should find that the Department lacked subject matter jurisdiction on remand to discipline Plaintiff for the second count when all that remained in that count was one violation under 22(A)(34), which by the plain language of the Act cannot be the

sole basis for discipline." We reject this argument for several reasons.

¶ 33    First, the "term 'jurisdiction' is not strictly applicable when referring to an administrative agency" and, instead, the term is used "as shorthand for describing the agency's authority to act." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 14 n. 2. Even if the concept of "subject matter jurisdiction" could be applied to the Department, such jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Here, the Department is vested with the authority to decide the type of case that was presented here—namely, whether plaintiff violated the Act and what the appropriate penalty for any violations should be. 225 ILCS 60/22 (West 2018). *See also*, *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 67. Any possible violation of section 23 of the Act would not deprive the Department of "jurisdiction."

¶ 34    Second, we also note that section 23 itself only addresses reports required to be provided by certain entities—including healthcare institutions, insurers, professional associations, *etc*.—and not to plaintiff's independent, personal obligation to report certain information to the Department. 225 ILCS 60/23 (West 2018). Under this section, and as relevant here, it would only be if such an entity had made a required report under section 22A(34) of the Act to the Department that plaintiff's failure to also make a report to the Department of that same information could "not be the sole grounds for disciplinary action." *Id*. That is simply not the situation presented here.

¶ 35    Third, and as plaintiff himself acknowledges, he has now been found to have committed three violations of the Act, including violations of both sections 22(A)(9) and 22(A)(34) of the Act. He was also explicitly disciplined for violations of both of those sections of the Act. A violation of section 22(A)(9) is not addressed at all in section 23 of the Act, and plaintiff's violation

of that section and the plain record before us make it clear that he was not disciplined solely for a violation to which section 23 applies. His contention that count II of the operative complaint contains only a single, confirmed violation of section 22(A)(34) is immaterial.

¶ 36    We next address plaintiff's contention that the Department did not have authority to impose an "indefinite" suspension. We disagree.

¶ 37    As an initial matter, plaintiff has forfeited this argument by raising it for the first time on appeal in his reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (Points not argued in opening brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Forfeiture aside, section 22(A) of the Act specifically permits the Department to "revoke, suspend, place on probation, reprimand, refuse to issue or renew, or take any other disciplinary or non-disciplinary action as the Department may deem proper with regard to the license or permit of any person issued under this Act" based upon the type of violations plaintiff has been found to have committed. 225 ILCS 60/22(A) (West 2018). Thereafter, "[a]t any time after the successful completion of a term of probation, suspension, or revocation of a license, the Department *may* restore the license to the licensee, unless after an investigation and a hearing, the Secretary determines that restoration is not in the public interest." (Emphasis added.) 225 ILCS 60/43 (West 2018).

¶ 38    These two sections of the Act have been interpreted to grant the Department the authority to suspend a medical license for a minimum period of time, after which the Department *may* reinstate that license after considering relevant factors at the conclusion of that period. *Albazzaz v. Illinois Department of Financial & Professional Regulation*, 314 Ill. App. 3d 97, 104 (2000). The Department's decision to indefinitely suspend plaintiff's license for a minimum amount of time falls well within this authority.

¶ 39    Next, we consider the parties' assertions with respect to plaintiff's citation to numerous purportedly comparable disciplinary decisions entered by the Department, both in the circuit court and again upon appeal, even though those decisions were not previously cited in the administrative proceeding before the Department and therefore are not a part of the administrative record.

¶ 40    To begin with, to the extent that the parties dispute the propriety of the circuit court's consideration of these decisions, that issue is irrelevant. As noted above, "[i]n administrative cases, our role is to review the decision of the administrative agency, not the determination of the circuit court." *Marconi*, 225 Ill. 2d at 531. In addition, we reiterate that because we agree with the Department that its initial imposition of a minimum two-year suspension of plaintiff's medical license upon remand should be affirmed, any question as to the propriety of the circuit court proceedings subsequent to that decision is moot.

¶ 41    Thus, the only relevant question is whether this court, in the context of conducting our own administrative review of the Department's decision, may consider any of the Department decisions relied upon by plaintiff on appeal, even though those decisions were not previously cited in the administrative proceeding before the Department and therefore are not a part of the administrative record. We find that we may not.

¶ 42    The Administrative Review Law specifically provides that upon administrative review, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2018). As such, the "statute limits our review to the record before us; we may not hear new or additional evidence." *Robbins v. Carbondale Police Pension Fund of City of Carbondale, Ill.*, 177 Ill. 2d 533, 538 (1997); *Marconi.*, 225 Ill. 2d at 532 ("The statute, however, specifically limits judicial review to the administrative record."). Furthermore, "[a]s a general rule, issues or defenses

not raised before the administrative agency will not be considered for the first time on administrative review." *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396–97 (2002).

¶ 43    Here, defendant attempts to oppose the discipline imposed by the Department in this case by citation to purportedly comparable disciplinary decisions entered by the Department in which a lesser sanction was imposed, even though those decisions were not cited during the administrative proceeding below. This effort clearly runs counter to the plain language of the Administrative Review Law and the other authority cited above, and we therefore decline to consider these cases upon administrative review.

¶ 44    In reaching this conclusion, we reject plaintiff's contention the Department decisions he seeks to cite for the first time on appeal are not "evidence" that should have been presented before the Department, but more like "case law" to which he should be allowed to cite for the first time on appeal. Plaintiff then cites to several cases he claims stand for the proposition that comparable cases may be considered for the first time on appeal in in the context of administrative review. *Sonntag v. Stewart*, 2015 IL App (2d) 140445, ¶ 21; *Kafin v. Illinois Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶¶ 43-50; *Lamm v. McRaith*, 2012 IL App (1st) 112123, ¶¶ 31-33.

¶ 45    However, in each of those cases the appellate court compared the matter before it to other published appellate court decisions as part of its analysis, not to unpublished, non-precedential decisions of an administrative agency that were not a part of the administrative record and which were not cited in the administrative proceeding. *Id*. We find that there is a significant difference between the clearly permissible practice of citing to published appellate court decisions upon administrative review and an attempt to cite to purportedly comparable administrative decisions

for the first time in such a context. The former we find permissible, the latter we do not.

¶ 46    Having addressed these preliminary issues, we turn to the heart of this appeal; *i.e.*, whether the Department abused its discretion in suspending plaintiff's medical license for a minimum of two years.

¶ 47    As the parties acknowledge on appeal, courts have applied two somewhat different tests in reviewing an administrative sanction for an abuse of discretion. We need not settle the parties' dispute as to which test is correct, as under either test plaintiff has failed to show an abuse of discretion.

¶ 48    Under the department's preferred test, it is generally recognized that upon administrative review the court is not at liberty to substitute their judgment for that of the agency. *Wilson v. Illinois Department of Professional Regulation*, 317 Ill. App. 3d 57, 66 (2000). Therefore, a reviewing court will not interfere with an agency's decision to impose any particular sanction unless the decision is unreasonable, arbitrary or unrelated to the purpose of the relevant statute. *Singh v. Department of Professional Regulation*, 252 Ill. App. 3d 859, 870 (1993). As explained in *Bultas v. Board of Fire & Police Commisioners of City of Berwyn*, 171 Ill. App. 3d 189, 197 (1988), under this test:

> "given the limited standard of review of determining whether the sanction was arbitrarily selected, we must decline to consider whether a more lenient sanction *** may have been more appropriate. We are aware of no authority which properly permits courts reviewing administrative decisions to reweigh evidence, including mitigating factors, for the purpose of determining that the sanction *** is exceedingly harsh and, on that basis, substituting some lesser penalty in its place. Consideration of the relative severity of discharge goes beyond the scope of our review. To participate in such considerations reduces the review

of administrative decisions to an exercise in second-guessing and ignores the deference to be accorded to administrative bodies."

¶ 49     Applying this test to the matter before us, we find no abuse of discretion in the imposition of a suspension of plaintiff's medical license for a minimum of a two years. The record reflects that the Department specifically imposed this discipline only after considering the seriousness of the offenses, the presence of three, separate offenses, plaintiff's significant prior disciplinary history, and the lack of contrition exhibited by plaintiff. All these factors are expressly allowed to be considered by the Department in imposing a sanction. 68 Ill. Adm. Code 1130.200 (2013). Furthermore, the "purpose of the Act is to protect the public health and welfare from those not qualified to practice medicine." *Nwaokocha*, 2018 IL App (1st) 162614, ¶ 63. Notably, acting "dishonestly [is] inconsistent with the 'high standard of honesty and integrity imposed on the medical profession.' " *Id*., citing *Cicmanec v. Department of Registration & Education*, 182 Ill. App. 3d 710, 718 (1989)).

¶ 50     On the facts before us and considering the highly deferential standard of review discussed above, we find that no abuse of discretion under the Department's preferred test, where we cannot say that its sanction was unreasonable, arbitrary or unrelated to the purpose of the Act.

¶ 51     We come to a similar conclusion even if we instead apply plaintiff's preferred test. As plaintiff correctly notes, some courts addressing this issue have recognized that the propriety of a sanction imposed under the Act may also be reviewed for an abuse of discretion by questioning whether the sanction is overly harsh in light of either: (1) any mitigating circumstances, or (2) because it is out of line with sanctions imposed in other cases with similar facts. *Kafin*, 2012 IL App (1st) 111875, ¶¶ 42-43; *Siddiqui v. Illinois Dept. of Professional Regulation*, 307 Ill. App. 3d 753, 763-64 (1999).

¶ 52    With respect to any mitigating circumstances, plaintiff contends the Department's two-year suspension is unduly harsh because: (1) he is being sanctioned for a mere "technical violation" of the Act, (2) he has been otherwise compliant with the requirements of the Act and his prior probation, and (3) he had never before been disciplined for any act of dishonesty. We do not find these arguments convincing.

¶ 53    Indeed, plaintiff's contention that he only committed a "technical violation" is yet another example of a long-demonstrated lack of contrition for his actions, and his lack of respect for the high standard of ethics and honesty required of doctors. Defendant's prior disciplinary history and his actions before the Department in this case—including his continued minimization of the seriousness of his offenses and his incredible testimony and efforts to frustrate cross-examination before the Department—are not mitigating evidence but rather evidence of aggravating factors. 68 Ill. Adm. Code 1130.200 (2013). Moreover, the fact that plaintiff may have been otherwise compliant with his responsibilities does not minimize the seriousness of the violations at issue here. Finally, the record simply belies plaintiff's attempt to portray himself as a historically honest person with respect to the proper supervision of his medical career. As noted above, plaintiff has repeatedly been found to be less than honest with both the DEA and the Department.

¶ 54    As to any comparison with purportedly similar cases, we have already concluded that plaintiff may only reply upon Department decisions that were cited in the administrative proceeding. The record reveals that plaintiff cited only to two purportedly similar cases below.

¶ 55    However, one of those cases involved a matter that was resolved through a consent order. See *Department of Financial and Professional Regulation v. Anhil Agarwal*, No. 2013-2340. This court has recognized that sanctions imposed *via* consent orders cannot be meaningfully compared to sanctions imposed after a full hearing in these circumstances. *Nwaokocha*, 2018 IL App (1st)

162614, ¶ 57. And the other case cited by plaintiff, *Department of Financial and Professional Regulation v. Christian Struven*, No. 2012-10529, is clearly distinguishable. While that matter went to a full hearing and a lesser sanction was imposed for similar offenses, the Department explicitly found that the doctor in that case accepted that he had made a mistake, showed contrition, and fully complied with the Department's investigation. Such circumstances are not present here.

¶ 56    Thus, under either test, we conclude that plaintiff has failed to show that the Department abused its discretion in suspending plaintiff's medical license for a minimum of two years.

¶ 57    For the foregoing reasons, we affirm the Department's March 2017 decision to indefinitely suspended plaintiff's medical license for a minimum of two years, and therefore reverse the circuit court's January 2018 order reversing that decision and remanding for reconsideration, and vacate both the Department's April 2018 decision under protest pursuant to that remand and the circuit court's final April 2019 order affirming the Department's April 2018 decision.

¶ 58    Circuit court orders vacated in part and reversed in part; Department's decision affirmed in part and vacated in part.

¶ 59    JUSTICE DELORT, specially concurring:

¶ 60    I join the majority's order in full with the exception of ¶¶ 40-44. In those paragraphs, the majority addresses the plaintiff's reliance on administrative agency decisions which he contends had comparable facts but which resulted in lesser discipline. The plaintiff did not present these allegedly comparable decisions before the agency, and the majority holds that by failing to do so, this court may not consider them.

¶ 61    Many administrative agencies maintain extensive archives of their decisions which are indexed and published for the benefit of litigants, courts, and similar agencies. See, *e.g.*, *Public Employee Reporter for Illinois* (Thompson Reuters), *Index of Electoral Board Decisions* (Chicago

Board of Election Commissioners) (available at https://app.chicagoelections.com/documents/general/IndexOfElectoralBoardDecisions.pdf). While administrative agency decisions are not binding on this court, we may consider them for their persuasive reasoning. *E. Richland Educ. Ass'n IEA-NEA v. Illinois Educ. Labor Relations Bd.*, 173 Ill. App. 3d 878, 902 (1988) (holding that decisions of the National Labor Relations Board were persuasive authority). In some fields, the number of published agency cases far exceeds the number of published judicial opinions. Therefore, I do not agree there should be a hard-and-fast rule prohibiting a court from considering an agency decision if it was not cited before the agency itself.

¶ 62     Despite this disagreement, I do not find the plaintiff's reliance on the other agency decisions persuasive. I concur with the remainder of the majority's reasoning and its judgment.